(No. 97659.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DEMICUS WOODS, Appellee.

*Opinion filed April 7, 2005.*

458

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, John E. Nowak, Matthew Connors, Annette Collins and Ashley A. Romito, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Tomas G. Gonzalez, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Demicus Woods, was found guilty of the offense of possession of a controlled substance. 720 ILCS 570/402 (West 2000). Based upon his prior criminal history, defendant was sentenced to an extended term of five years' incarceration in the Illinois Department of Corrections. On appeal, the appellate court reversed defendant's conviction, holding that the evidence presented at defendant's trial was insufficient to sustain a guilty finding because the State had failed to establish a sufficient chain of custody for the controlled substance. No. 1—02—0290 (unpublished order under Supreme

Court Rule 23). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

## BACKGROUND

On July 31, 2001, defendant was charged by information with one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2000)) and one count of possession of a controlled substance with intent to deliver within 1,000 feet of a church (720 ILCS 570/407(b)(2) (West 2000)).

Defendant's trial commenced on November 27, 2001. The State's sole witness was Chicago police officer Thomas Dineen. Officer Dineen testified that on June 30, 2001, he received a phone call that a black male with braids in his hair and dressed in black clothing was selling drugs from a vacant lot located at 224 North Lacrosse in Chicago. At approximately 1 p.m., Officer Dineen went to the vacant lot and observed defendant, who matched the given description. Officer Dineen then set up surveillance of the lot, observing that location from a nearby backyard.

Officer Dineen testified that a man—later identified as codefendant Taylor—was standing near the lot, approximately 25 to 30 feet from defendant, and yelling the term "blows" to passing vehicles. According to Dineen, "blows" is street terminology for heroin. Officer Dineen further testified that as he was observing the scene, one of the passing vehicles stopped, and the subject driving the vehicle had a brief conversation with Taylor. The subject then exited the vehicle, walked over to defendant, and handed defendant a single United States currency bill. Defendant pocketed the money, and then walked over to a blue van that was parked in the lot. Officer Dineen testified that defendant bent down by the van's front tire, removed an object from that location, walked back to the subject who had given him the money, and

handed the object to that man. According to Officer Dineen, based upon his experience and training, he believed that he had observed a narcotics transaction.

Officer Dineen testified that he then left his point of surveillance and, along with his partners, approached defendant and Taylor and detained them. Dineen stated that defendant was approximately 30 feet away from the van at the time he was detained. Officer Dineen then walked over to the front tire of the blue van and recovered "three zip-lock packets each containing a tin foil packet containing what I believed to be heroin." Officer Dineen testified that defendant was then placed under arrest. Upon performing a custodial search, $82 was recovered from defendant's front pants pocket and another $100 was recovered from his sock. No narcotics were recovered from defendant's person. Officer Dineen testified that the items recovered from underneath the van were inventoried under inventory number "2550419" and that "standard Chicago Police Department procedures" were followed with regard to inventorying these items.

On cross-examination, defense counsel focused on the possession element of the crime. Officer Dineen admitted that because defendant held his hand in a clenched position, he did not see the object that defendant picked up from the area near the front tire of the van. For the same reason, Officer Dineen testified that he could not tell what was handed by defendant to the individual who had given defendant money. Officer Dineen stated that he broke his surveillance after observing defendant engage in only one suspect transaction. According to Dineen, from his surveillance point, he could see both sides of the parked van, but only from the rear. Dineen acknowledged that between the time that his partners picked him up from the surveillance point—which was one block from the lot—and the time they drove to the lot, Dineen

momentarily lost sight of defendant and the items allegedly located by the front tire of the parked van.

After the testimony of Officer Dineen, the following colloquy occurred:

"PROSECUTOR: Judge, at this time, the State has no further witnesses. We'd proceed by way of stipulation.

If called to testify, Lisa Gilbert, G I L B E R T, would be qualified as an expert in the area of forensic chemistry and would testify that in her employment as a forensic scientist at the Illinois State Police Crime Lab, she received inventory number 2550419 in a sealed condition and then inspected the contents and found the contents to be three packets. She then performed tests commonly accepted in the area of forensic chemistry for ascertaining the—the presence of a controlled substance as to one of the packets and found that one packet to be point one gram of heroin. She then estimated the weight of the remaining two packets and estimated their weight to be point two grams.

So stipulated as to Miss Gilbert's testimony?

DEFENSE COUNSEL: So stipulated.

PROSECUTOR: Judge, with that, the State would rest."

Defense counsel immediately moved for a directed finding. The court entered a finding of not guilty as to the greater charge, possession with intent. However, the court denied the motion for directed finding with regard to the lesser-included offense of possession of a controlled substance. After the court made its ruling, the defense rested. Defendant presented no evidence on his behalf.

In closing argument, defense counsel continued to focus his argument on the contention that the State had failed to satisfy its burden of proof to establish that defendant had "possession and exclusive control" of the items recovered from the front tire of the blue van. Defense counsel argued that Officer Dineen "didn't see or describe the objects at all what was recovered so we can't say for sure if [defendant] ever touched those objects." In addition, defense counsel stressed that after breaking his surveillance of defendant in the vacant lot,

Officer Dineen admitted that as his partners picked him up to drive to the scene, Dineen "lost sight of the narcotics, and he lost sight of [defendant]." Defense counsel argued that during that interval, anyone could have had contact with the items recovered from the front tire of the van. Therefore, counsel concluded, there was reasonable doubt as to defendant's guilt with respect to his possession of a controlled substance, and a finding of not guilty was appropriate.

In rebuttal, the State contended that the testimony of Officer Dineen was credible and uncontradicted. In addition, the State asserted that the only individual that the officer observed exercising constructive possession over the narcotics that were recovered from the scene was defendant.

At the conclusion of closing argument, the circuit court held that the State had proven that defendant had possession of the narcotics. Accordingly, the court found defendant guilty as to the lesser charge of possession of a controlled substance (720 ILCS 570/402 (West 2000)).

On December 20, 2001, defendant filed a motion for new trial. The circuit court denied this motion. The court then immediately proceeded to sentencing. The State introduced defendant's prior criminal history, which included six felony convictions. Based upon his criminal background, the State argued that defendant was eligible for an extended-term sentence of six years. The circuit court agreed with the State that, based upon defendant's background, a substantial period of incarceration was merited. Accordingly, the circuit court sentenced defendant to a period of five years' incarceration.

Defendant appealed. The appellate court reversed defendant's conviction. No. 1—02—0290 (unpublished order under Supreme Court Rule 23). The appellate panel agreed with defendant's contention—raised for the first time on appeal—that the State had failed to prove him

guilty of possession of a controlled substance beyond a reasonable doubt because the State failed to establish a sufficient chain of custody for the recovered narcotics.

The appellate court began its analysis by holding that, to the extent that defendant challenged the sufficiency of the evidence to sustain his conviction, waiver was not applicable to this claim and defendant could raise the issue for the first time on direct appeal. In reviewing the evidence presented at defendant's trial, the appellate panel determined that the only common features in the testimony describing the condition of the evidence seized by Officer Dineen and the description of the evidence tested by Lisa Gilbert were the number of items and the inventory number assigned to those items. The appellate panel held that, because "[n]either the officer's testimony, nor the stipulation to the testimony provided by the forensic chemist, included a description of the packets," there was "no basis to conclude that the evidence when seized sufficiently matches the description of the evidence tested."

In addition, the appellate court factually analogized this case to *People v. Cowans*, 336 Ill. App. 3d 173 (2002). In *Cowans*, the court held that there were missing links in the chain of custody where the only testimony about the safekeeping of the alleged contraband was that a police officer inventoried a specific number of items under a specific inventory number. In this case, the appellate panel similarly held that "[t]he record is devoid of information regarding the procedures used by the police officers for safekeeping the alleged contraband and how the items were delivered to the crime lab. The record contains no evidence either by testimony or stipulation that Officer Dineen would identify the items tested by the forensic chemist and would testify that these items were in the same or substantially the same condition as when he recovered them from under the van" at the time of defendant's arrest.

Finally, the appellate court also rejected the State's argument that the parties' stipulation as to the chemist's testimony should be interpreted as covering the entire chain of custody, including the police officer's handling and safekeeping of the items. Although the appellate panel acknowledged the general rule that stipulations should be liberally construed, the court held that the stipulation entered into by defendant and the State in the matter at bar was "limited to the chemist's testimony, and the chemist could not have testified to how the evidence was handled prior to the time she received it."

In sum, the appellate court concluded that because the State failed to establish a sufficient chain of custody connecting defendant to the controlled substance, the evidence was insufficient to sustain defendant's conviction. Accordingly, the appellate panel held that a reversal of defendant's conviction was required.

We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

The State contends that the appellate court committed several errors in reversing defendant's conviction on the basis of that court's finding that the evidence presented by the State at defendant's trial was insufficient to establish a chain of custody for the controlled substance. The State first contends that defendant waived any challenge to the chain of custody of the narcotics because defendant failed to object to the propriety of the custody chain at trial and in his posttrial motion. According to the State, the appellate court erred by allowing defendant's claim to improperly circumvent the waiver rule and proceed as a challenge to the sufficiency of the evidence.

Second, the State contends that, apart from the issue of waiver, the appellate court erred by holding that the State did not establish a sufficient chain of custody for

the heroin evidence adduced at trial, even though defendant failed to present—or even allege—any evidence of tampering, substitution or alteration. The State asserts that the appellate court arrived at this conclusion despite the fact that the chemical composition of the heroin was not contested and was actually stipulated to between the parties at trial. According to the State, the appellate court's ruling in this case improperly imposes a heightened burden on the State to establish a chain of custody of narcotics, even in the absence of a challenge by defendant and despite an agreed stipulation to the chemical composition of the narcotics.

Defendant responds that the appellate court correctly reversed his conviction on the basis that the State failed to establish that the substance recovered from under the van at the time of his arrest was the same substance tested by the forensic chemist. Defendant asserts that without a sufficient chain of custody connecting him to the narcotics, the State failed to prove that he was in possession of heroin, and thus he was not proved guilty of the offense of possession of a controlled substance beyond a reasonable doubt. Defendant therefore contends that the appellate court correctly treated his claim as a challenge to the sufficiency of the evidence to support his conviction. Defendant further asserts that, because a challenge to the sufficiency of the evidence is not subject to waiver and may be raised for the first time on appeal, the State's waiver argument is misplaced.

In addition, defendant asserts that the stipulation entered into between the parties was limited to an agreement that the substance *tested* was, in fact, heroin. Defendant contends that the stipulation did not pertain to the *recovered* substance in any way. In addition, defendant maintains that the stipulation made no reference to the chain of custody, to the actions of Officer Dineen, or to anything else preceding the receipt of the

substance by the chemist, Lisa Gilbert. Therefore, defendant concludes, the stipulation does not impact upon whether the State satisfactorily established a chain of custody for the narcotics.

Our review of the issues presented by this appeal is guided by several familiar and well-settled legal principles. In order to convict an individual of unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the controlled substance and that he or she also had immediate and exclusive possession or control of the narcotics. *E.g.*, *People v. Frieberg*, 147 Ill. 2d 326, 360-61 (1992); *People v. Eghan*, 344 Ill. App. 3d 301, 306 (2003). It is axiomatic that the State must prove that the material recovered from the defendant and which forms the basis of the charge is, in fact, a controlled substance. *People v. Hagberg*, 192 Ill. 2d 29, 33-34 (2000); *People v. Judkins*, 28 Ill. 2d 417, 420 (1963).

When the State seeks to introduce an object into evidence, the State must lay an adequate foundation either "through its identification by witnesses or through a chain of possession." *People v. Stewart*, 105 Ill. 2d 22, 59 (1984); *People v. Kabala*, 225 Ill. App. 3d 301, 305 (1992). The character of the item sought to be introduced into evidence determines which method of establishing a foundation must be employed. *People v. Irpino*, 122 Ill. App. 3d 767, 773 (1984); *People v. Graves*, 107 Ill. App. 3d 449, 454 (1982). For example, where an item has readily identifiable and unique characteristics, and its composition is not easily subject to change, an adequate foundation is laid by testimony that the item sought to be admitted is the same item recovered and is in substantially the same condition as when it was recovered. *Irpino*, 122 Ill. App. 3d at 773; *People v. Gilbert*, 58 Ill. App. 3d 387, 390 (1978).

However, in cases, such as that at bar, where a

defendant is accused of a narcotics violation, the physical evidence is often not readily identifiable or may be susceptible to tampering, contamination or exchange. In such instances, the State is required to establish a chain of custody. See *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994); *People v. Hominick*, 177 Ill. App. 3d 18, 29 (1988). The State bears the burden to establish a custody chain that is sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution. *People v. Harris*, 352 Ill. App. 3d 63, 68 (2004); see also *People v. Whirl*, 351 Ill. App. 3d 464, 471 (2004); *People v. Winters*, 97 Ill. App. 3d 288, 289-90 (1981). The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist. *People v. Ryan*, 129 Ill. App. 3d 915, 919 (1984). Unless the defendant produces evidence of actual tampering, substitution or contamination, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination; the State must demonstrate, however, that reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered. *Harris*, 352 Ill. App. 3d at 68-69; *Bynum*, 257 Ill. App. 3d at 510; *People v. Reed*, 243 Ill. App. 3d 598, 604 (1993); *People v. Pettis*, 184 Ill. App. 3d 743, 753 (1989).

"Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence." *Bynum*, 257 Ill. App. 3d at 510; *Reed*, 243 Ill. App. 3d at 604; *People v. Tsombanidis*, 235 Ill. App. 3d 823, 833 (1992). Even where the chain of custody has a missing link, "trial

courts have properly admitted evidence where there was testimony which sufficiently described the condition of the evidence when delivered which matched the description of the evidence when examined." *Bynum*, 257 Ill. App. 3d at 510; *Pettis*, 184 Ill. App. 3d at 754; *Irpino*, 122 Ill. App. 3d at 775.

Thus, the State establishes a *prima facie* showing that the chain of custody for controlled substances is sufficient by meeting its burden to establish that reasonable protective measures were taken to ensure that the evidence has not been tampered with, substituted or altered between the time of seizure and forensic testing. After the State establishes a *prima facie* case, the burden then shifts to the defendant to produce evidence of actual tampering, alteration or substitution. Upon the defendant making such a showing, the burden again shifts to the State to rebut the defendant's claim. Under this scheme, a defendant is not required to show evidence of actual tampering or substitution unless the State has first established its *prima facie* showing that it is improbable that the evidence was compromised.

A defendant, however, may waive the necessity of proof of chain of custody by entering into a stipulation with respect to the evidence. *People v. Holloman*, 46 Ill. 2d 311 (1970); *People v. Polk*, 19 Ill. 2d 310, 315 (1960); see *People v. Carpenter*, 228 Ill. App. 3d 899, 904 (1992). A stipulation is an agreement between parties or their attorneys with respect to an issue before the court (*People ex rel. Stead v. Spring Lake Drainage Levee District*, 253 Ill. 479, 492 (1912); see *Wright v. County of Du Page*, 316 Ill. App. 3d 28, 40 (2000)), and courts look with favor upon stipulations because " 'they tend to promote disposition of cases, simplification of issues[,] and the saving of expense to litigants.' " *People v. Coleman*, 301 Ill. App. 3d 37, 48 (1998), quoting *In re Estate of Moss*, 109 Ill. App. 2d 185, 192 (1969). The primary rule in the

construction of stipulations is that the court must ascertain and give effect to the intent of the parties. *In re Marriage of Galen*, 157 Ill. App. 3d 341, 344-45 (1987). "A stipulation is conclusive as to all matters necessarily included in it" (34 Ill. L. & Prac. *Stipulations* § 8 (2001)) and "[n]o proof of stipulated facts is necessary, since the stipulation is substituted for proof and dispenses with the need for evidence" (34 Ill. L. & Prac. *Stipulations* § 9 (2001)). Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he or she stipulated. See *Polk*, 19 Ill. 2d at 315; 34 Ill. L. & Prac. *Stipulations* § 11 (2001).

With these principles in mind, we review the propriety of the judgment of the appellate court in the instant cause by first considering the State's argument that the appellate court erred in allowing defendant to circumvent the waiver rule by characterizing his attack on the State's chain of custody as a challenge to the sufficiency of the evidence. The State asserts that defendant's failure to object to the chain of custody in the trial court, combined with his stipulation to the narcotics, waives any claim that the State's chain of custody was deficient. Defendant responds that the State's failure to explain what was done with the evidence between the time it was recovered from under the van to the time it was inventoried constituted a fatal gap in the custody chain which prevented the State from showing that the evidence seized and the evidence tested were one and the same. According to defendant, because there was a "complete absence" of any evidence regarding the handling, safekeeping and delivery of the substance, the State failed to establish an adequate chain of custody for the narcotics. Accordingly, defendant concludes, his claim legitimately challenges the sufficiency of the evidence and, therefore, is not subject to waiver. We disagree. We hold that, under the facts presented in this case, the ap-

pellate court erred by failing to hold that defendant waived his chain of custody challenge. Because waiver limits the parties' ability to raise an issue, not this court's ability to consider an issue (*People v. Davis*, 213 Ill. 2d 459, 470 (2004)), we address the merits of defendant's assertions.

Ordinarily, a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). If a defendant fails to satisfy either prong of this test, his challenge is considered waived on appeal. *Enoch*, 122 Ill. 2d at 186. This rule is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level. *People v. Rodriguez*, 313 Ill. App. 3d 877, 887 (2000); *Bynum*, 257 Ill. App. 3d at 514.

In contrast, when a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the waiver rule and may be raised for the first time on direct appeal. *Enoch*, 122 Ill. 2d at 190. When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). If a court determines that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, the defendant's conviction must be reversed. *People v. Smith*, 185 Ill. 2d 532, 541 (1999); *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Where the prosecution has failed to prove its case, "the only proper

remedy is a judgment of acquittal," and remand of the cause for a new trial is not an option. *Olivera*, 164 Ill. 2d at 393.

We reject the notion that a challenge to the State's chain of custody is a question of the sufficiency of the evidence. A chain of custody is used to lay a proper foundation for the admission of evidence. Accordingly, a defendant's assertion that the State has presented a deficient chain of custody for evidence is a claim that the State has failed to lay an adequate foundation for that evidence. See 2 J. Strong, McCormick on Evidence § 212, at 9 (5th ed. 1999). Thus, a challenge to the chain of custody is an evidentiary issue that is generally subject to waiver on review if not preserved by defendant's making a specific objection at trial and including this specific claim in his or her posttrial motion.

We acknowledge, however, that under limited circumstances a challenge to the chain of custody may be properly raised for the first time on appeal if the alleged error rises to the level of plain error. The plain error doctrine allows a reviewing court to address defects affecting substantial rights if the evidence is closely balanced or if fundamental fairness so requires rather than finding the claims waived. *People v. Donoho*, 204 Ill. 2d 159, 187 (2003); *People v. Macri*, 185 Ill. 2d 1, 58 (1998). Plain error analysis applies where the defendant has failed to make a timely objection, and it is the defendant who bears the burden of persuasion with respect to prejudice. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003). For example, in those rare instances where a complete breakdown in the chain of custody occurs—*e.g.*, the inventory number or description of the recovered and tested items do not match—raising the probability that the evidence sought to be introduced at trial was not the same substance recovered from defendant, a challenge to the chain of custody may be brought under the plain er-

ror doctrine. When there is a complete failure of proof, there is no link between the substance tested by the chemist and the substance recovered at the time of the defendant's arrest. In turn, no link is established between the defendant and the substance. In such a case, a failure to present a sufficient chain of custody would lead to the conclusion that the State could not prove an element of the offense: the element of possession. However, in the instant matter we are not faced with a situation that requires preservation of defendant's right to challenge the State's chain of custody for the first time on appeal.

Here, defendant was charged with possession of a controlled substance, and the State established a *prima facie* showing that the chain of custody was sufficiently complete. In the instant cause, the State satisfied its burden to establish that reasonable protective measures were employed to protect the evidence and that it was unlikely that the evidence had been tampered with, substituted or altered between the time of seizure and forensic testing. Officer Dineen testified that at the time of defendant's arrest, he recovered "three zip-lock packets each containing a tin foil packet containing what I believed to be heroin." Officer Dineen also testified that these items were inventoried under inventory number "2550419" and that "standard Chicago Police Department procedures" were followed with regard to inventorying these items. The parties then agreed to stipulate that, if called to testify, forensic chemist Lisa Gilbert would state that she received inventory number 2550419, which contained three packets in a sealed condition, and that upon testing the substance in the packets she found the substance to be heroin. We find that the testimony of Officer Dineen and the contents of the stipulation are consistent in that they both speak of the same inventory number and the same number of items

which were described as "packets." In addition, Officer Dineen testified that he followed standard Chicago police department procedures to inventory the suspected heroin, and that the chemist received the inventory in a sealed condition. We conclude that Officer Dineen's testimony coupled with the stipulation sufficiently describe the condition of the evidence when seized which matches the description of the evidence when examined.

Therefore, in this case, the State introduced evidence which linked the substance seized at the time of the defendant's arrest and the substance tested by the forensic chemist, and satisfied its *prima facie* showing. The State has, therefore, introduced evidence with respect to the element of possession. Accordingly, defendant's challenge to the sufficiency of the chain of custody cannot be to the lack of proof as to the existence of an element of the crime but, rather, is an attack on the State's failure to lay a proper foundation for the proof of that element. Therefore, defendant's challenge to the State's chain of custody is properly considered an attack on the admissibility of the evidence, rather than a claim against the sufficiency of the evidence, and is subject to the ordinary rules of waiver. Because defendant failed to specifically object to the sufficiency of the chain of custody at trial, and because no specific chain of custody challenge was raised in his posttrial motion, his claim has been procedurally defaulted.

Moreover, under the unique facts of this case, we find that defendant also affirmatively waived his challenge to the sufficiency of the State's chain of custody. Our review of the record reveals that defendant not only failed to challenge the sufficiency of the custody chain at trial, but he also took part in its offering into evidence, by agreeing to stipulate to the testimony of chemist Lisa Gilbert. Although defendant now contends that the stipulation was limited solely to his agreement with the

State that the substance *tested* by the chemist was heroin and that the stipulation did not in any way agree that the substance *seized* at the time of his arrest was heroin, defendant's narrow construction of the stipulation is belied by the record.

In the context of the entire record, it is apparent that the intention of the parties' agreement to stipulate to the chemist's testimony in a summary and brief manner served to remove from this case any dispute with respect to the chain of custody or the chemical composition of the recovered substance. It is unlikely that the State would have agreed to Gilbert's stipulated testimony, and thereby forfeit the opportunity to place the chemist on the witness stand to describe in detail the packets received from the police department, how they were received, the condition they were in, and the tests performed, had not the stipulation been intended to eliminate the need for defending this testimony against a challenge to the chain of custody. In addition, it may be reasonably assumed that defendant's trial counsel decided to forgo the opportunity to cross-examine the expert in order to focus on other theories of the defense. Throughout the course of the trial, defendant's counsel focused almost entirely on the issue of whether the State had sufficiently proved that defendant possessed the controlled substance, and no claim was raised by defendant that the evidence had been tampered with, altered or substituted. Furthermore, it makes little sense for defense counsel to stipulate to expert testimony which is completely irrelevant to the case. However, this would be precisely the result were we to accept defendant's current argument that his trial counsel stipulated to the fact that the chemist tested a substance determined to be heroin, but that the heroin had no relationship whatsoever to the case.

In this case, by stipulating to the chemist's report

and not raising the chain of custody issue at trial, defense counsel placed the State in a position of believing that the sufficiency of the chain of custody was not at issue in this case. If defendant's trial counsel had explicitly stated that he was stipulating to the chemist's report but *not* to the chain of custody, the State would have been afforded the opportunity to remedy the matter at the trial level. As stated, however, the sufficiency of the chain of custody was not challenged by defendant at any point in the trial proceedings. Thus, in the context of this case, where no issue was raised either as to the identity of the substance as heroin or with respect to the sufficiency of the chain of custody, it is reasonable to conclude that the parties intended to remove this issue from the case, and that there was no dispute involving the admissibility of the narcotics evidence. Thus, defendant has affirmatively waived review of the chain of custody issue where he agreed to what he now seeks to challenge on appeal. A defendant forfeits any issue as to the impropriety of the evidence if he procures, invites, or acquiesces in the admission of that evidence. *People v. Caffey*, 205 Ill. 2d 52, 114 (2001) (when a party procures or invites the admission of evidence, he cannot challenge on appeal the admission of that evidence). It would be patently unfair to allow defendant to raise this challenge at such a late date for the first time on appeal.

Accordingly, in the matter before us, we hold that the appellate court erred in failing to apply the waiver rule to bar defendant from raising, for the first time on appeal, a challenge to the sufficiency of the State's chain of custody.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*